Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence affirms, with some modifications, the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. On 11 July 1994 and 30 March 1995, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On those dates, an employment relationship existed between plaintiff and defendant-employer.
3. Cigna Property and Casualty Company was the workers' compensation insurance carrier on the risk on those dates.
4. On 11 July 1994, plaintiff sustained an injury by accident to his back.
5. On 30 March 1995, plaintiff allegedly sustained an injury by accident to his back.
6. Plaintiff has not worked for defendant-employer since 27 April 1995.
7. Plaintiff's average weekly wage at the time, including overtime and allowances, was $375.20, which yields a compensation rate of $250.13.
8. A set of plaintiff's medical records, identified in paragraphs 8A through 8D of the parties' Pre-Trial Agreement and marked as Stipulated Exhibit Number Two, is admitted into evidence.
9. A set of documents consisting of plaintiff's medical records, personnel records, interrogatory responses and Industrial Commission forms, collectively marked as Stipulated Exhibit Number Three, is admitted into evidence.
 EVIDENTIARY RULINGS
A report by Richard Cowan, M.S., C.R.C., received from defendants' counsel on 24 April 1998, was admitted into evidence.
***********
Based upon the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff became employed by defendant-employer as a material handler in 1979. This job required plaintiff to deliver parts and materials to workers on the various assembly lines operated by defendant. Material handlers were required to lift weights as great as fifty pounds. During his employment with defendant-employer, plaintiff worked as a material handler on nearly all assembly lines in defendant-employer's Tarboro facility.
2. While performing his usual duties for defendant-employer on 11 July 1994, plaintiff lifted a box of gears from the floor and experienced a sharp pain in his back. As a result of this incident, plaintiff sustained a back strain and was unable to work on 12 July 1994. Plaintiff returned to work for defendant-employer on 13 July 1994, but was unable to return to work again until 21 July 1994. Plaintiff returned to work on 21 July 1994 with light duty restrictions. However, by August 1994, plaintiff was released to return to work in his usual position without any restrictions.
3. Plaintiff continued to work in his regular material handler position through 27 April 1995. On 24 April 1995, plaintiff presented to his urologist, V. Spencer Long, M.D. Plaintiff reported having a relatively recent onset of severe back pain with radiation into his left leg. Due to plaintiff's symptoms, Dr. Long restricted plaintiff from lifting and referred him to David Miller, M.D. Dr. Miller examined plaintiff on 26 April 1995. Based upon the examination, Dr. Miller diagnosed plaintiff as having left lumbar radiculopathy, secondary to a disc herniation. Dr. Miller also recommended that plaintiff undergo a MRI of his lumbar spine. The MRI was performed on 27 April 1995.
4. On the same date the MRI was performed, 27 April 1995, plaintiff first informed defendant-employer that he injured his back on 30 March 1995 when he was bending over to lift some parts. Plaintiff did not describe lifting or pulling materials weighing four hundred pounds, as he later related to Dr. Bryant. In his testimony at the hearing before the deputy commissioner, plaintiff did not describe lifting or pulling anything weighing four hundred pounds.
5. The MRI confirmed Dr. Miller's diagnosis of a disc herniation at L5-S1. Plaintiff underwent surgery by Dr. Miller on 14 June 1995. Dr. Miller performed a laminectomy and removed an extruded portion of the L5-S1 disc. Following his surgery, plaintiff returned to Dr. Miller for re-evaluation. When plaintiff presented to Dr. Miller on 10 July 1995, plaintiff complained of head, neck, and shoulder pain, as well as pain radiating into his left arm, tenderness in the back, pain in the left calf, and numbness in his left foot. As a result of the evaluation, Dr. Miller ordered another MRI to determine whether plaintiff had a recurrent disc herniation. The MRI did not reveal a recurrent disc herniation, and Dr. Miller prescribed physical therapy. Dr. Miller also referred plaintiff to Barrie Hurwitz, M.D., a neurologist and an Associate Professor at Duke University Medical Center.
6. After reviewing plaintiff's pre-surgical and post-surgical MRIs and conducting a physical examination, Dr. Hurwitz was unable to explain plaintiff's neck, arm, and chest pain. Dr. Hurwitz declined plaintiff's request for a note excusing him from work indefinitely, but Dr. Hurwitz referred plaintiff to the Duke Pain Clinic and excused plaintiff from work during the period that he was being treated there.
7. Dianne Scott, M.D., a physician associated with Duke Pain Clinic, began treating plaintiff on 25 October 1995. Dr. Scott diagnosed plaintiff as having myofascial pain syndrome, and she treated him with trigger point injections. Dr. Scott also prescribed a TENS unit and biofeedback relaxation training. Plaintiff returned to Dr. Scott in November 1995. At that time, plaintiff continued having low back and left leg symptoms. Dr. Scott administered an epidural steroid injection. When plaintiff returned to Dr. Scott in December 1995, Dr. Scott referred plaintiff to Allan Friedman, M.D., a neurosurgeon, for evaluation of plaintiff's continuing symptoms.
8. Dr. Friedman evaluated plaintiff on 19 December 1995. At that time, plaintiff had a recurrent herniated disc at L5-S1. Dr. Friedman performed surgery on 11 January 1996 and removed a free fragment from plaintiff's L5-S1 disc. Following surgery, plaintiff was again prescribed physical therapy. The course of physical therapy began in February and continued into March 1996. After completion of the physical therapy, plaintiff returned to Dr. Scott, who treated plaintiff with medications on several subsequent dates.
9. Plaintiff received a follow-up evaluation from Dr. Friedman in June 1996. At that time, plaintiff was having burning pain in his feet and pain in both legs. Unable to explain the presence of these symptoms, Dr. Friedman ordered another MRI. This study revealed no disc herniation or nerve root compression. Dr. Friedman was not able to determine the source of plaintiff's symptoms on that date or thereafter. On 4 June 1996, Dr. Friedman restricted plaintiff from standing for long periods of time, sitting for more than six hours per day, lifting more than thirty pounds on an occasional basis, and significant bending and stooping. Dr. Friedman also imposed moderate restrictions on plaintiff for climbing stairs and operating heavy machinery.
10. On 12 March 1997, plaintiff came under the care of James Bryant, M.D., a general practitioner. Thereafter, Dr. Bryant evaluated plaintiff on a monthly basis. Dr. Bryant treated plaintiff's symptoms with prescription medications.
11. On 17 March 1997, plaintiff was evaluated by William Richardson, an orthopedic surgeon. Dr. Richardson determined that plaintiff had reached maximum medical improvement and was capable of performing work in the sedentary or light duty categories.
12. On 20 January 1998, plaintiff presented to William Lestini, M.D., for an independent medical evaluation. Dr. Lestini determined that plaintiff was capable of work in the medium work category, with no lifting over fifty pounds and no frequent twisting. Dr. Lestini also recommended that plaintiff work in a position that permitted him to change positions hourly.
13. Since being released to return to work with restrictions in June 1996, plaintiff has made no efforts to obtain employment.
14. As of 31 March 1998, there was employment available, with multiple employers, within a reasonable distance from plaintiff's home. The available employment was consistent with plaintiff's physical restrictions, education, and transferable job skills. The available employment offered wages equal to or greater than the wages plaintiff earned from defendant-employer. Plaintiff would have been able to obtain employment in one of these available positions if plaintiff had made reasonable efforts to do so.
15. Defendant-employer permanently ceased all manufacturing operations at its Tarboro, North Carolina, facility in September 1995.
16. After his injury on 11 July 1994, plaintiff returned to work in his usual position as a material handler, earning wages equal to or greater than the wages he earned prior to his injury. From the time he returned to work, and continuing through 27 April 1995, plaintiff was capable of earning wages equal to or greater than the wages he earned prior to 11 July 1994.
17. As a result of his herniated discs, plaintiff was incapable of earning wages from any employer from 27 April 1995 through June 1996. However, the evidence fails to show that plaintiff's herniated discs were caused by his July 1994 back strain or by the alleged incident on 30 March 1995.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff failed to establish that his disc herniations were caused by an injury by accident in 11 July 1994 or by an alleged specific traumatic incident on 30 March 1995. Click v.Freight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980).
2. Plaintiff is not entitled to compensation under the Act for his inability to earn wages after 27 April 1995. G.S. 97-2(6).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claims for compensation under the Act are DENIED.
2. Each party shall bear its own costs, except defendants shall pay expert witness fees of $155.00, $235.00 and $265.00 to Dr. Bryant, Dr. Lestini and Dr. Friedman.
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ DIANNE C. SELLERS COMMISSIONER
S/_____________ BERNADINE S. BALLANCE COMMISSIONER